IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH A. GIANSANTE, | : | Civil Action No. 2:17-cv-01307-MPK |
| Plaintiff, | : | The Hon. Maureen P. Kelly |
| vs. | : | *Electronically Filed* |
| PITTSBURGH PUBLIC SCHOOLS, | : | |
| Defendant. | : | |

**BRIEF IN SUPPORT OF
<u>MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL</u>**

Defendant, through its undersigned counsel, Brian P. Gabriel, Esq. and Campbell Durrant Beatty Palombo & Miller, P.C., files the following *Brief in Support of Motion for Certification of Interlocutory Appeal.*

**I.   BACKGROUND**

Plaintiff, Joseph Giansante ("Plaintiff" or "Giansante") was dismissed without pay in June 2013 because he had received consecutive unsatisfactory teacher ratings for the 2011-12 and 2012-13 school years. (ECF No. 62, ¶¶ 1, 2, 3). Pittsburgh Public Schools ("Defendant" or "PPS"), however, continues the health insurance of a teacher who challenges a second unsatisfactory rating during the pendency of a grievance arbitration or board hearing process. Giansante challenged this determination through a board hearing process, which resulted in recommended findings of fact, conclusions of law that were adopted through Board Resolution dated November 24, 2015. The Board's official action, which formally dismissed Giansante from his employment with PPS, is required under the School Code for the final discharge of a professional employee. (ECF No. 62, ¶¶ 11, 12, 33, 34). Giansante appealed to the Pennsylvania Secretary of Education, who

{DocNo=00629867.3 }

reviewed the matter *de novo* and entered an Opinion and Order on September 27, 2017. (ECF No. 62, ¶ 14; ECF No. 33-4, pp. 47-108).

In May 2016, Giansante filed a Charge of Discrimination with the EEOC, alleging age discrimination. On October 11, 2017, Plaintiff commenced the instant action by filing a two-count Complaint alleging age discrimination under the ADEA and Pennsylvania Human Relations Act (PHRA). PPS moved for summary judgment, arguing first that Giansante's claims are time-barred because he did not file an EEOC charge within 300 days of receiving a second unsatisfactory rating and being removed without pay from his teaching position. Defendant also argued that the reason for Giansante's termination was legitimate and non-discriminatory.

The Court entered a Memorandum Opinion and Order, denying summary judgment on June 10, 2019. On the timeliness issue, the Court determined first that Giansante had conceded "that the issuance of a second unsatisfactory rating and his dismissal without pay in June 2013 are discrete acts that are time barred. The Court agrees and, accordingly, these acts may not give rise to independent discrimination claims." (ECF Doc. 66, 6/10/19 Op., p. 21) (citation omitted). After further discussing *Ricks*, the Court proceeded to determine that:

> In this instance, however, Plaintiff *has* alleged a wrongful discharge claim arising out of the School Board's November 24, 2015, termination vote. The vote inflicted an injury separate and apart from the loss of pay in June 2013, through the cessation of Giansante's health care benefits. Further, record evidence establishes that a recommendation to terminate by the Superintendent does not necessarily result in final termination, because the School District's independent vote is a required step to effectuate termination. ECF No. 52 ¶¶ 386, 399. The termination vote did not occur until after a multi-day hearing before the School Board, and thereby required an independent assessment of the reasons for the rating. Giansante claims that this evaluation process has been engaged, first by the District, and then by the School Board, to reduce labor costs during a budgetary shortfall. This

> process resulted in the termination of employment of a disproportionate number of teachers in Plaintiff's protected age class who earn substantially more than younger teachers. ECF No. 60 at 5. In this regard, the fact that the School Board voted to terminate Giansante after a five-day hearing and the presentation of evidence by both Giansante and the District lends credence to the independent participation of the School Board in Giansante's termination.
>
> The above-recognized facts distinguish Giansante's ADEA claim from that presented in Ricks, and in other cases cited by Defendant, each decided prior to Morgan, where the United States Supreme Court recognized that several actionable and discrete discriminatory acts may occur within the scope of employment, including, inter alia, a wrongful suspension, the denial of training, and a wrongful termination. Morgan, 536 U.S. at 114. Moreover, in presenting a discrimination claim arising from conduct occurring within the statutory limitations period, the Supreme Court unequivocally held that past acts may be presented as background evidence in support of a timely claim. Id. at 113. Giansante's reliance on and reference to the evaluation process and unsatisfactory ratings therefore is permitted to establish that the School Board, after hearing the evidence presented by the District and Giansante, effectuated a termination depriving Plaintiff employment because of his age. Accordingly, the District's Motion for Summary Judgment on the basis of timeliness is denied.

(ECF Doc. 66, 6/10/19 Op., pp. 21-22).

## II.   SUMMARY OF RELIEF SOUGHT

This Motion concerns the Court's dual finding that Giansante's dismissal without pay in June 2013 is time-barred but that the School Board's vote in November 2015 inflicted a separate and actionable injury.  The core issue is whether the cessation of Giansante's health benefits and the Board vote at the conclusion of the Board hearing process constitutes a discrete and independently discriminatory act.

The Court's opinion that the Board's action was discrete and actionable "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation" as required by 28 U.S.C. § 1292(b).  *Nat'l R.R. Passenger*

{DocNo=00629867.3 }

3

*Corp. v. Morgan*, 536 U.S. 101 (2002); *Delaware State Coll. v. Ricks*, 449 U.S. 250 (1980). For the reasons explained below, Defendant respectfully requests that the Court amend and certify its Memorandum Opinion and Order accordingly.

## III. MOTION TO AMEND AND CERTIFY ORDER FOR APPEAL

Under 28 U.S.C. § 1292(b), a district court may certify an interlocutory order for appeal if "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *See Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974) *cert. denied* 419 U.S. 884 (1974).

### A. CONTROLLING QUESTIONS OF LAW

The controlling questions of law in this matter arise from a requirement that the timely event must be both discrete and independently discriminatory. Under this standard, there are two distinct questions.

The first controlling question of law is whether the May 2016 Charge was timely because the cessation of Giansante's health benefits in November 2015 constitutes a discrete event actionable under *Morgan* rather than a time-barred consequence of his second unsatisfactory rating and dismissal under *Ricks*? As set forth in the Opinion, the Court determined that the Board's termination vote constituted a discrete event under *Morgan* because it "inflicted an injury separate and apart from the loss of pay in June 2013, through the cessation of Giansante's health care benefits." (ECF Doc. 66, 6/10/19 Op., pp. 21-22).

The second controlling question of law is whether the "independent participation" standard and the type of evidence cited by the Court is consistent with and satisfies the

{DocNo=00629867.3 }
4

"independently discriminatory" standard applicable under *Ricks* and *Morgan*? As set forth in the Opinion, the Court found that the fact of a five-day hearing and the background evidence challenging the legitimacy of the second unsatisfactory ratings was sufficient.

A question of law is controlling if a contrary determination by the appellate court would require reversal of a judgment or the question is "serious to the conduct of the litigation either practically or legally." *Katz*, 496 F.2d at 754-755; see *Chavez v. Occidental Chemical Corp.*, 300 F. Supp. 3d 517, 538 (S.D. N.Y. 2018) (certifying Order denying motion for judgment on pleadings where "statute of limitations defense in this case poses an outcome-determinative question of law."); *Courtney v. La Salle Univ.*, No. CIV. A. 92-3838, 1996 WL 363910, *1 (E.D. Pa. June 28, 1996) (granting request that partial denial of motion for summary judgment order be certified for interlocutory appeal where issue of timeliness of EEOC charge "is clearly a controlling question of law.").[1]

The first requirement is satisfied. If the Court's timeliness determination is found to be erroneous, the outcome would be dispositive of Giansante's wrongful discharge lawsuit. If PPS is correct in either of its arguments - that the Board vote did not constitute a discrete or discriminatory act under the standards discussed below - Giansante's 2016 Charge would be untimely thus foreclosing his wrongful discharge claim under the ADEA and the PHRA.

---

[1] Although District Judge Shapiro believed that her legal conclusion was correct, she found that "substantial grounds for difference of opinion exist" regarding the "issue of when the statute of limitations begins to run in an employment discrimination case." *Courtney, supra*, at *2. Judge Shapiro noted that although the dispute between the parties began in the late 1980s, there had been litigation in both trial and appellate state courts, the filing of EEOC charges, and the federal action commenced in 1992, she amended the partial summary judgment order to permit an immediate appeal to the Third Circuit in June 1996 "in the interest of the administrative justice." *Id.*

### B.   SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION

The second requirement is satisfied "when the matter involves 'one or more difficult and pivotal questions of law not settled by controlling authority.'"  *Knipe v. SmithKline Beecham*, 583 F. Supp. 2d 553, 599 (E.D. Pa. 2008) (citation omitted).  There must be a genuine doubt about the governing legal standard.  *Id.*; *see also Bradburn Parent Teacher Store, Inc. v. 3M,* No. 02-7676, 2005 WL 1819969, at *4 (E.D. Pa. Aug. 2, 2005) (internal citations omitted).  This can be demonstrated when there are conflicting court opinions on the issue or by the absence of binding precedent.  *Knipe*, 583 F. Supp. 2d at 600 (citation omitted).

### Post-*Morgan* Decisions

Courts have confronted the question of whether or when the *Ricks*' accrual rule is supplanted by *Morgan*.  In 2007, the Supreme Court analyzed *Ricks* and *Morgan* in the context of a Title VII and Equal Pay Act.

> The instruction provided by *Evans*, *Ricks*, *Lorance*, and *Morgan* is clear. The EEOC charging period is triggered when a discrete unlawful practice takes place. **A new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from the past discrimination**. But of course, if an employer engages in a series of acts each of which is **intentionally discriminatory**, then a fresh violation takes place when each act is committed.  See Morgan, supra, at 113, 122 S.Ct. 2061.

*Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 627-628 (2007), *overturned* Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5 (2009) (emphasis supplied).

In 2011, the Tenth Circuit Court of Appeals rejected the argument that *Morgan* fundamentally altered the *Rick*'s accrual rule. In the opinion authored by then-Circuit Judge Gorsuch, the Court of Appeals held that:

> *Morgan,* however, didn't so fundamentally rework how we measure time. To be sure, *Morgan* held that *hostile work environment* claims accrue each time acts contributing to that environment occur. *See id.* at 117–18, 122 S.Ct. 2061. And to be sure, this represents a deviation from the general *Ricks* accrual rule. But *Morgan* took great pains to reaffirm the *Ricks* rule and to draw only a narrow distinction for hostile work environment claims. *Morgan* began with an extended discussion endorsing *Ricks*'s rule that **"[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" trigger the statute of limitations when announced to the claimant, and do so whether or not all of their adverse effects or consequences are immediately felt.** *Id.* at 114, 122 S.Ct. 2061. *Morgan* then proceeded to distinguish hostile work environment claims from this general rule only because, unlike the mine run of employment discrimination claims, hostile work environment claims "cannot be said to occur on any particular day," and instead usually involve a pattern of acts that aren't "actionable on [their] own" but give rise to a legal violation only when assessed in their totality. *Id.* at 115–16, 122 S.Ct. 2061. By its own terms, then, *Morgan,* helps the plaintiffs in this case not at all. Mr. Almond and Mr. Weems don't seek to pursue a hostile work environment claim but wish instead to challenge the District's termination, transfer, and demotion decisions. And *Morgan* expressly held that those sorts of decisions remain subject to *Ricks*'s rule.

*Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1178 (10th Cir. 2011) (emphasis supplied), *cert. denied,* 133 S.Ct. 317 (2012).

In 2016, the United States Supreme Court rejected the applicability of the *Ricks* accrual rule in the context of a constructive discharge claim. *Green v. Brennan*, 136 S.Ct. 1769 (2016). The Court held that the limitations period did not commence until actual separation because resignation was an element of the claim and the plaintiff did not therefore have a cause of action until he resigned. After noting "the standard rule that a limitations period begins to run after a claim accrues, not after an inevitable consequence of that claim," the Court proceeded to summarize its holding in *Ricks* and stated that:

> Green's resignation, by contrast, is not merely an inevitable consequence of the discrimination he suffered; it is an essential part of his constructive-discharge claim. That is, Green could not sue for constructive discharge until he actually resigned. **Of course, Green could not resign and then wait until the consequences of that resignation became most painful to complain. For example, he could not use the date of the expiration of his health insurance after his resignation to extend the limitations period.** But the "inevitable consequence" principle of *Ricks*, *Ledbetter* and *Evans* does not change the focus of the limitations period, which remains on the claim of discrimination itself. See *Lewis v. Chicago*, 560 U.S. 205, 214, 130 S.Ct. 2191, 176 L.Ed.2d 967 (2010) (holding *Evans* and its progeny establish only that a Title VII plaintiff must show a present violation within the limitations period" (internal quotations omitted)); *National Railroad Passenger Corporation v. Morgan*, 536 U.S. at 115-121, 122 S.Ct. 2061 (holding limitations period for hostile-work-environment claim runs from the last act composing the claim.)  For a constructive discharge, the claim does not exist until the employee resigns.

*Green,* 136 S.Ct. at 1780-81 (emphasis supplied).

Federal courts have continued to apply *Ricks* in circumstances similar to those in the instant case.  In *Lovern v. Jackson*, the district court reviewed *Morgan* and *Ricks* in a denial of tenure/termination case and concluded that the plaintiff's claim was time-barred.

> The bases for Lovern's discrimination claim are two adverse actions--her denial of tenure and termination. These two actions constitute a single discriminatory act for purposes of the statute of limitations. *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980). Her termination was linked to her denial of tenure. Thus, the statute of limitations was triggered by the denial of tenure.
>
> As in *Ricks*, Lovern's termination was not a separate act of discrimination, but an inevitable consequence of the denial of tenure under the University's policies. Id. at 257-58. *** Lovern alleges that her termination was the product of Jackson and Musah's discriminatory actions.  **She does not claim that she was treated differently than similarly situated unsuccessful tenure applications.**  Accordingly, her discrimination claim is timely only if she filed her charge within 300 days of when she learned or should have learned she was denied tenure.

*Lovern v. Jackson,* Civ. A. No. 08-0082, 2015 WL 494069, *6-7 (D.V.I. Feb. 3, 2015) (emphasis supplied); *see also, Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 456 (5th Cir.

2011) ("An employment event that is merely an effect of a prior employment decision does not constitute a separate and distinct act that begins the calendar anew for bringing an ADEA claim."); *cf. Datto v. Harrison*, 664 F. Supp. 2d 472, 485 (E.D. Pa. 2009) (applying *Ricks* and *Bailey* to motion to dismiss finding that notice of removal from program was operative accrual date; separately finding that plaintiff had sufficiently alleged that a refusal to reinstate him to the program "was both motivated by discriminatory and retaliatory animus and constituted a failure to accommodate his disability.")

In some post-*Morgan* decisions, courts have continued to apply *Ricks* without directly addressing *Morgan*. For example, in a 2007 decision (unpublished), the District Court discussed cases cited by PPS, including *Ricks*, and held where an employee receives a "face saving" offer to resign, the offer does not toll the statute of limitations pending the employee's acceptance, rejection, or revocation.[2]  *Welde v. Nat'l Disease Research Interchange*, No. 04-5905, 2007 WL 1244484, *6 (E.D. Pa. Apr. 25, 2007); *see also Katz v. National Board of Medical* Examiners, 751 F. App'x 231, 237 (3d Cir. Sept. 25, 2018); Ortony *v. Nw. Univ.*, 736 F.3d 1102, 1103 (7th Cir. 2013).

**Genuine Doubt - Discrete**

Turning to the Court's decision in this matter, the Opinion cited to *Morgan* as the basis for departing from the *Ricks*' accrual rule with respect to the Board vote. Giansante argued that the cases supporting the Defendant's positon were distinguishable but did

---

[2] During a December annual review meeting, Welde was unexpectedly terminated, and told that her last day of work be in January. However, Welde was also awarded a 4% retroactive increase and offered the option to resign. *Id.* at *2. The Court found that the limitations period was triggered at the December meeting because Welde knew or should have known "that an adverse action had taken place" and "already suspected that her termination was connected to her knee injury; thus, Plaintiff was aware from this date not only of the alleged harm itself, but also of Defendants' allegedly prohibited motive." *Welde, supra,* 2007 WL 124484 at *6 (emphasis in original), citing *Bailey v. United Airlines*, 279 F.3d 194, 198 (3d Cir. 2002)

not identify positive authority supporting his argument in his principal Brief.  In Giansante's Sur Reply Brief, he cited *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006).  In that case, the Third Circuit held that the principles of *Morgan* applied equally to a § 1983 employment case involving a number of discrete acts; these discrete acts, including termination, were time-barred because they could not be aggregated and resurrected.  Neither *O'Connor* nor *Morgan* reach the issue of whether a plaintiff may have two discrete wrongful termination claims, as the Court found in this matter.

*Morgan* focuses on discrete acts as triggering the limitations period for that particular act whether part of a hostile work environment or not.  Read in isolation, *Morgan* suggests that any adverse employment is actionable as a discrete act.  Although *Morgan* defines a "discrete act" as one that must be "independently discriminatory," the opinion does not analyze *Ricks* or its progeny.

*Ricks* teaches that the cessation of health care benefits is "one of the later *effects*" of the alleged discriminatory ratings decision and thus does not trigger a new limitations period.  *Ricks*, 250 U.S. at 258; *accord Lovern* (applying *Ricks* because the subsequent termination was linked to the tenure denial, and holding that the two adverse employment actions are one for purposes of the statute of limitations).  If applicable, this standard would allow for only one wrongful termination limitations period.

In *Green*, the Supreme Court's states that *Ricks* continues to apply when the plaintiff has a complete cause of action and could file suit, but not before.  *Green,* 136 S.Ct. at 1780-81.  This holding indicates that Giansante's wrongful discharge claim was complete in June 2013, as the continuation of health care would not render his wrongful discharge claim incomplete.  *See also Marcum v. Harris*, 328 F. App'x 792, 795 (3d Cir.

April 2, 2009) ("Accrual occurs 'when the plaintiff has a complete and present cause of action . . . that is, when the plaintiff can file suit.'"), *citing* and *quoting Wallace v. Kato*, 549 U.S. 384, 387 (2007).

The Tenth Circuit interpreted *Morgan* narrowly to only provide an exception to the *Ricks'* accrual rule in hostile work environment case, but not for a wrongful termination claim "whether or not all of their adverse effects or consequences are immediately felt." *Almond*, 665 F.3d at 1178. This holding also suggests a single limitations clock should apply to Giansante's wrongful discharge claim.

The essence of *Ricks* and its progeny is that there is one limitations clock for a wrongful termination claim. Given the continued validity of *Ricks*, and the absence of post-*Morgan* authority establishing that Plaintiff should be afforded a second limitations period, certification of this issue is appropriate. Defendant has not identified precedent so holding and does not see controlling authority for this proposition in the submissions of Giansante or in the Court's Opinion. PPS respectfully submits that there is a lack of controlling authority for the Court's finding that the Board vote causing the cessation of Giansante's health care in November 2015 was a separate or discrete act justifying a second limitations period for his claim of wrongful discharge. At the very least, there exists serious doubt regarding the correct legal standard.

**Genuine Doubt – Independently/Intentionally Discriminatory**

The Opinion in this matter indicates a standard based upon the "independent participation" of the Board in receiving and voting on the hearing record. PPS respectfully submits that there is an absence of controlling authority for this standard, and that precedent suggests a more demanding standard.

*Ricks* holds that the Board's subsequent termination vote does not restart the limitations period unless Plaintiff alleges and proves "that the manner in which his employment was terminated differed discriminatorily from the manner in which" PPS terminated other teachers who received a terminal unsatisfactory rating. *Ricks*, 250 U.S. at 258 ("But no suggestion has been made that Ricks was treated differently from other unsuccessful tenure aspirants."); *see also Lovern v. Jackson,* 2015 WL 494069, at *6-7 (rejecting argument that the termination decision was separate and actionable where the plaintiff alleged that it "was the product" of two evaluators but did "not claim that she was treated differently than similarly situated unsuccessful tenure applications."); *accord Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 778-780 (3d Cir. 2007). The Court's Opinion here implicitly rejects the application of this standard. If this standard does apply, it is obvious that Giansante has never alleged or argued that the manner in which he was terminated "differed discriminatorily" from other similarly-situated teachers.

*Ledbetter* says that for a subsequent act to be discrete and actionable it must have been "intentionally discriminatory." *Ledbetter*, 550 U.S. at 627-628 (reconciling *Ricks* and *Morgan*); *see also Wrolstad v. CUNA Mut. Ins. Soc'y*, 911 F.3d 450, 457 (7th Cir. 2018) (interpreting *Morgan* to require that "the later act--the one within the limitations period--must be *discrete* and *independently discriminatory*."); *Mezu v. Morgan State Univ.*, 367 F. App'x 385, 388-389 (4th Cir. Feb. 19, 2010) (applying *Morgan*'s "independently discriminatory" acts standard). This standard suggests that Giansante was required to put forth evidence of the Board's discriminatory intent rather than evidence showing only that it approved of determinations made by certified administrators later claimed to have acted with discriminatory motives. If so, evidence that the Board

"effectuated" the ratings determinations made by certificated evaluators would not suffice on this record because it does not provide a basis from which the *Board's* discriminatory intent may be inferred.  In this regard, Giansante's summary judgment filings do not refer to the extensive evidence submitted during the Board hearing.  Thus, he does not cite to any of the voluminous testimony.  That record, which was the subject of this *de novo* appeal to the Secretary of Education, and produced at the outset of this litigation, reveals none of the evidence now cited as supporting a claim that the Board vote was a discriminatory act.  Indeed, Plaintiff has not (and could not) argue that the Board considered any evidence beyond that which was actually presented in the Board hearing.

The Court stated that the Board hearing "process resulted in the termination of employment of a disproportionate number of teachers in Plaintiff's protected age class." (ECF Doc. 66, 6/10/19 Op., p. 21).  However, the record evidence cited by the Court[3] are not statistics that reflect these numbers.  The statistics referenced by the Court (ECF No. 66, 6/10/19 Op., pp. 14-15), and relied upon by Giansante, are for unsatisfactory ratings issued and approved by the Superintendent (Linda Lane) at the end of the school year, not those voted on by the School Board following a hearing.  There is no evidence suggesting that any of the teachers (other than Giansante) who were issued an unsatisfactory rating during those school years requested a School Board hearing.  Nor is there any evidence suggesting that this information was presented to, or considered by, the Board in connection with its vote in November 2015.

---

[3] The Court's opinion cites to ECF No. 60 at 5, which is Plaintiff's Sur-Reply Brief.  Page 5 of that Brief, however, does not appear to relate to this issue.

{DocNo=00629867.3 }

13

During the Board hearing process, Giansante did not argue that he had been subjected to discrimination during the Board hearing process.[4]  Connecting evidence generated after-the-fact, such as end-of-school year ratings over a period of time before and after the school years in question, to the School Board's *one* vote on the *one* teacher who requested a Board hearing, would not satisfy a requirement that the Board's action be separately, intentionally, or deliberately discriminator.  (ECF No. 64, ¶ 386).[5]

Similarly, pointing to the undisputed fact that most teachers chose to resign after receiving a second unsatisfactory rating is not probative of a discriminatory decision by the Board in November 2015.  As a starting point, it is hardly surprising that a teacher would chose to resign in view of the extensive two-year process that takes place before a second adverse rating.  It is difficult to understand why this fact would be construed as evincing discrimination, particularly where teachers have strong union representation and make informed decisions.  More to the point as to the Board's vote in November 2015 is an undisputed (and voluminous) record that such evidence was not presented to the Board in connection with Giansante's Board hearing or otherwise.  Resignations appear as a single line with the "reason" as "personal" and are approved each month within a packet of other personnel actions (e.g. transfers, retirements, etc.).[6]

Giansante also advanced an argument (without supporting evidence) in his Brief that the teacher rating process was undertaken to generate dismissals of more senior

---

[4] In his *de novo* appeal to the Secretary, Giansante claimed discrimination but did not identify age or other protected characteristic in making this argument. (ECF No. 33-4, p. 86).

[5] The Opinion (p. 15) cites to Plaintiff's Counterstatement No. 386, which quotes a September 28, 2015, email from the District to the Post-Gazette, but does not include the final sentence:  "Mr. Giansante is the only teacher in four years – and likely much longer – to choose such a hearing."

[6] *See*, for example, https://www.boarddocs.com/pa/pghboe/Board.nsf/files/A2VD7M7C0789/$file/September%2030%2C%202015%20%28Report4811%29.pdf at pg. 19 (last accessed June 24, 2019).

{DocNo=00629867.3 }

teachers because of budgetary considerations. Aside from the lack of evidence to support the supposition that various certificated evaluators undertook their responsibilities with such a motive, there is no evidence to connect this theory to the Board's termination vote. Giansante had only taught for PPS since August 2005 and had completed a total of eight years. Unsurprisingly, Giansante's age was not disclosed or discussed during the Board hearing process. The pay scale depends, of course, on years of teaching service rather than age. Giansante's years of service would not provide a basis for anyone to assume that he was even over the age of 40.

In summary, Giansante makes no effort to demonstrate broader knowledge possessed by any voting Board member – knowledge beyond the evidence of his unsatisfactory teaching performance – when that Board member voted on his termination in November 2015. As such, the evidence does not provide an evidentiary foundation for a belated contention that the Board's vote was a separate act of intentional discrimination. If PPS is correct that a standard of independent or intentional discrimination by the *Board* is applicable, Giansante is unable to satisfy the "discriminatory" element.

### C.   MATERIAL ADVANCEMENT OF THE LITIGATION

The third requirement is "closely tied" to the controlling question of law requirement. *Knipe*, 583 F. Supp. 2d at 600 (citation and quotation omitted). An interlocutory appeal will materially advance litigation if it eliminates the need for trial or eliminates complex issues so as to simplify the trial. *Id.*; *L.R. v. Manheim Twp. Sch. Dist.*, 540 F. Supp. 2d 603, 613 (E.D. Pa. 2008), *citing* and *quoting Orson, Inc. v. Miramax Film Corp.,* 867 F. Supp. 319, 322 (E.D. Pa. 1994).

Whether Giansante's wrongful termination claim was timely is a controlling and dispositive issue of law.  Should the Third Circuit Court of Appeals determine that the cessation of health benefits was not a discrete act <u>or</u> that the Board vote must and did not constitute an independently discriminatory act, the timeliness issue would be decided finally and would foreclose Giansante's wrongful discharge lawsuit.  This outcome would result in substantial savings of time and costs of trial for the parties and the Court. These considerations weigh heavily in favor of certification.  *See P. Schoenfeld Asset Mngt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 355, 358 (D.N.J. 2001) (Section 1292(b) is intended "to permit decision of legal issues as to which there is considerable question without requiring the parties first to participate in a trial that may be unnecessary.").

The time and costs associated with the lengthy trial in this matter will be substantial.  As set forth in the Court's opinion, the trial will include the extensive evidence relating to the two years in which Giansante received the unsatisfactory ratings that prompted his dismissal without pay in June 2013.  This evidence was the subject of the five day Board hearing and Giansante's unsuccessful appeal to the Secretary of Education.  This evidence has been deemed admissible as "background evidence," and the Court's pretext analysis relies primarily upon Giansante's assertions of inaccuracies in the observations and opinions of the certified administrators.  As such, the parties will fully litigate the details of Giansante's performance, improvement plans, observations and the reasons his performance was found to be unsatisfactory.  In addition to the issues highlighted within this Brief, there are complicated and unresolved issues regarding the admissibility and scope of evidence pertaining to Giansante's damage claims.

While the completion of discovery and the disposition of summary judgment motions typically weighs against certification, there are relevant counter-examples. *See Knipe*, 583 F. Supp. 2d at 600-601 (finding "that an interlocutory appeal may very well spare time and expense for both the Court and litigations" even though summary judgment had been decided and the Court anticipated substantial evidentiary issues and a lengthy trial); *United States ex rel. Brown v. Pfizer, Inc.*, Civil Action No. 05-6795, 2017 WL 2691927, *5 (E.D. Pa. June 22, 2017) (certifying for appeal case that was 11 years old where "brief delay for appellate review … could clarify the law in this area and materially advance the ultimate termination of this litigation."); *Courtney v. La Salle Univ.*, No. CIV. A. 92-3838, 1996 WL 363910, *2 (E.D. Pa. June 28, 1996); *cf. United States v. Two Hundred Eighteen Firearms*, Civil A. No. 86-7160, 1988 WL 3095, *1 (E.D. Pa. Jan. 14, 1988) (denying certification where case was ready for a trial expected to take no longer than 2 days). In this matter, certification of an interlocutory appeal may materially advance the litigation and that prospect outweighs the period of delay associated with an immediate appeal.

**IV.  CONCLUSION**

For the reasons discussed above, the requirements for certification under 28 U.S.C. § 1292(b) are satisfied in the present circumstances.

WHEREFORE, Defendant respectfully requests that this Honorable Court grant its *Motion For Certification of Interlocutory Appeal* and enter the Order attached thereto.

          CAMPBELL DURRANT BEATTY
          PALOMBO & MILLER, P.C.

By:  s/ Brian P. Gabriel
      Brian P. Gabriel
      PA 73132
      535 Smithfield Street, Suite 700
      Pittsburgh, PA  15222
      TEL: (412) 395-1261
      FAX: (412) 395-1291
      bgabriel@cdblaw.com

      Attorneys for Defendant,
      Pittsburgh Public Schools

Dated:  June 25, 2019

## **CERTIFICATE OF ELECTRONIC SERVICE**

I hereby certify that on June 25, 2019, I electronically filed the foregoing *Brief in Support of Motion for Certification of Interlocutory Appeal* with the Clerk of Court using the CM/ECF system, which will notify the following of the filing of the same:

Colleen Ramage Johnston, Esq.
Nikki Velisaris Lykos, Esq.
Johnston Lykos, LLC
525 William Penn Place – 28th Floor
Pittsburgh, PA  15219
*Attorney for Plaintiff*

        CAMPBELL DURRANT BEATTY
        PALOMBO & MILLER, P.C.

        By:   s/Brian P. Gabriel
            Brian P. Gabriel